IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CITI-TALENT, LTD.** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **CASE NO. 3:13-CV-00374-N** |
| | § | |
| **JING-SHENG YANG,** | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM IN SUPPORT OF DFENDANT YANG'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER AND/OR STAY THE ACTION

Respectfully submitted,

/s/ Robert M. Hailey
Robert M. Hailey
Texas Bar No. 24027362
*rhailey@rwtrial.com*
Steven L. Russell
Texas Bar No. 17437040
*srussell@rwtrial.com*
RUSSELL & WRIGHT, PLLC
15770 Dallas Parkway, Suite 1050
Dallas, Texas 75248
972-267-8400 (office)
972-267-8401 (fax)

**ATTORNEYS FOR DEFENDANT
JING-SHENG YANG**

## TABLE OF CONTENTS

I.          PROCEDURAL AND FACTUAL BACKGROUND.............................................2

II.         LEGAL ARGUMENT.......................................................................5

    1.     Rule 12(b)(1) Standard ............................................................5

    2.     The Declaratory Judgment Act and the First-to-File Rule......................6

    3.     This Court Should Exercise its Discretion and Dismiss The Complaint and its Claims For Declaratory Relief Because Plaintiff Engaged in Forum Shopping By Filing This Action in Anticipation of a Substantially Similar Lawsuit Now Pending in the Western District of Michigan.................................7

        A.     The Western District of Michigan Is An Appropriate Forum for All Matters to be Litigated by the Parties. .............................8

        B.     The Complaint Must Be Dismissed Because it Was Filed in Anticipation of an Action by Defendant Yang. .........................8

        C.     All other Relevant Factors Favor Dismissal of this Action. .....................11

    4.     This Action Should Be Transferred To The Western District of Michigan. .........12

        A.     Choice of Forum ..................................................14

        B.     Convenience of the Parties and Availability of Compulsory Process of  Unwilling Witnesses.................................14

        C.     Sources of Proof..................................................15

        D.     Location of Counsel................................................15

        E.     The Congestion of the Courts' Dockets....................................15

        F.     Jury Duty......................................................16

        G.     Governing Law .................................................16

III.        ABSENT DISMISSAL OR TRANSFER THIS COURT SHOULD STAY THIS ACTION PENDING RESOLUTION OF THE MICHIGAN ACTION ..........................17

IV.         CONCLUSION................................................18

## TABLE OF AUTHORITIES

### CASES

Amerada Petroleum Corp. v. Marshall, 381 F. 2d 661 (5th Cir. 1967)

British Borneo Exploration, Inc. v. Enserch Exploration, Inc., et al., No. 98-1609, 1998 WL 814625 (E.D. La. Nov. 24, 1998)

Business Trends Analysts v. Freedonia Group, Inc., 650 F. Supp. 1452 (S.D. N.Y. 1987)

Butcher v. Gerber Products Corp., No. 98-CIV-1819, 1998 WL 437150 (S.D.N.Y Aug. 3, 1998)

Eli's Chicago Finest v. Cheesecake Factory, Inc., 23 F.Supp.2d 906 (N.D. Ill. 1998)

Continental Airlines v. American Airlines, Inc., 805 F. Supp. 1392 (S.D. Tex. 1992)

Fletcher v. Southern Pacific Transp. Co., 648 F. Supp. 1400 (E.D. Tex. 1986)

Gribbin v. Hammer Galleries, 793 F. Supp. 233 (C.D. Cal. 1992)

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)

Gundle Lining Constr. Corp. v. Fireman's Fund Ins., 844 F. Supp. 1163 (S.D. Tex. 1994)

Johnson Bros. Corp. v. International Brotherhood of Painters, 861 F. Supp. 28 (M.D. La. 1994)

Mann Mfg. Inc. v. Hortex, Inc., 439 F.2d 403 (5th Cir. 1971)

MCG, Inc. v. Great Western Energy Corporation, 896 F.2d 170 (5th Cir. 1990)

MD Physicians & Associates v. State Board of Insurance, 957 F.2d 178 (5th Cir. 1992)

Micheel v. Harrison, 586 F. Supp. 169 (E.D. Pa. 1983)

Metro Optics v. Contex, Inc., No. 3:95-CV-2157-T, 1996 WL 302697 (N.D. Tex. March 14, 1996)

Moran v. Kingdom of Saudi Arabia, 27 F.3d 169 (5th Cir. 1994)

Oliver Gintel, Inc. v. Koslow's Inc., 355 F. Supp. 236 (N.D. Tex. 1973)

Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill, 751 F.2d 801 (5th Cir. 1985)

PAJ, Inc. v. Yurman Design, Inc., No. 3:98-CV-2487-P, 1999 WL 68651 (N.D. Tex. Feb. 9, 1999)

Ruth's Chris Steakhouse Franchise, Inc. v. Brown, Civ. A., No. 95-3526, 1996 WL 39406 (E.D. La. Jan. 31, 1996)

Serco Services Co. v. Kelley Co., Inc., No. 3:93-CV-1885-R, 1994 WL 715913 (N.D. Tex. May 24, 1994)

Sherwin-Williams Co. v. Holmes County, 343 F.3d 383 (5th Cir. 2003)

Stockman v. Federal Election Commission, 138 F.3d 144 (5th Cir. 1998)

Travelers Ins. Co., v. Louisiana Farm Bureau Federation, Inc., 996 F.2d 774 (5th Cir. 1993)

TV-3, Inc. v Royal Ins. Co. of Am., 28 F.Supp.2d 407 (E.D. Tex. 1998)

Williamson v. Tucker, 645 F.2d 404 (5th Cir. 1981)

Wilton v. Seven Falls Company, 515 U.S. 277 (1995)

## STATUTES and RULES

Rule 12 (b) (1) of the Federal Rules of Civil Procedure

28 U.S.C. § 1404 (a)

28 U.S.C. § 2201 (a)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CITI-TALENT, LTD.** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **CASE NO. 3:13-CV-00374-N** |
| | § | |
| **JING-SHENG YANG,** | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM IN SUPPORT OF DEFENDANT YANG'S MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER AND/OR**
**STAY THE ACTION**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendant Jing-Sheng Yang ("Defendant Yang" or "Yang") respectfully submits this memorandum of law in support of an order dismissing the Complaint for Declaratory Judgment and Other Relief (the "Complaint") filed by Plaintiff Citi-Talent, Ltd. ("Plaintiff" or "Citi-Talent") because Plaintiff's action in filing the Complaint precludes its right to such equitable relief.  In addition, the convenience of the parties and witnesses would be best served by dismissing this action in favor of a pending action brought by Defendant Yang in the Western District of Michigan, Grand Rapids Division on March 29, 2013, involving the same allegations and underlying dispute (the "Michigan Action"). Appendix pg. 1-41 (Exhibit 1).

Alternatively, Defendant Yang respectfully requests an order, pursuant to 28 U.S.C. § 1404(a), transferring this action from the Northern District of Texas to the Western District of Michigan, Grand Rapids Division, and consolidating it with the Michigan Action; or for an order staying this action pending resolution of the Michigan Action.

I.         **PROCEDURAL AND FACTUAL BACKGROUND**

This action arises from Plaintiff's infringing activities that violated Defendant Yang's copyright registrations. Plaintiff's infringing activities constitute, *inter alia*, copyright infringement, trade dress, unfair competition, deceptive trade practices and misappropriation of Defendant Yang's property rights. By making derivative works, trading off the goodwill of Defendant Yang, and manufacturing, distributing, selling and marketing knock-offs that directly copy Defendant Yang's copyright protected designs and artwork, Plaintiff has diluted the distinctiveness of Defendant Yang's designs, disparaged his reputation for exceptional quality and superior craftsmanship, and confused the consuming public as to the authenticity, commitment to quality and the value of Yang-designed products.

Rather than respond to a cease and desist letter from Defendant Yang's counsel dated January 10, 2013 ("Cease and Desist Letter"), Plaintiff chose to initiate the instant action in a transparent attempt to divest Yang – the natural plaintiff here – of his right to choose a proper forum for this action. Complaint, Doc. 1-5. It should be noted that the Cease and Desist Letter was not addressed to Plaintiff. Rather, the letter was directed to Meijer, Inc. ("Meijer"), the retailer of the knock-offs. Plaintiff's involvement as the supplier of the infringing items to Meijer was unknown to Defendant Yang. It was only upon receipt of Meijer's January 16, 2013 letter ("Meijer Letter") that Defendant Yang learned that Plaintiff supplied Meijer with the infringing items. Appendix pg. 42 (Exhibit 2).

An examination of the Cease and Desist Letter reveals that while Defendant Yang's counsel placed Meijer on notice of the infringement of Defendant Yang's copyrights and requested a prompt response thereto, the Cease and Desist Letter contained no imminent threat of litigation. Complaint, Doc. 1-5. Meijer understood there was no imminent threat of suit because it had dealt with Plaintiff in a prior allegation of infringement of a different copyright of

Defendant Yang.   Meijer notified Defendant Yang's counsel that Meijer was forwarding the correspondence to its supplier, Citi-Talent pursuant to a hold harmless/indemnification agreement "…for review and follow up." Appendix pg. 42 (Exhibit 2).   Meijer did not request that Defendant Yang not file an action.   Meijer did not even address the issue of litigation.   All of this was in keeping with the prior pattern of conduct between Meijer and Yang in the matter of the prior alleged infringement.

    As a result of Meijer's assurance that its supplier would be contacting Defendant Yang's counsel in the near future with regard to the issues raised by the Cease and Desist Letter, and based upon his prior dealings with Meijer and Citi-Talent (also the supplier in the prior matter), Defendant Yang made no further demands on or took provocative action against Meijer or Citi-Talent - even after the ten (10) day reply deadline set forth in the Cease and Desist Letter passed without a further response by either Meijer or Plaintiff.   In short, as a result of Defendant Yang's past experience with both Meijer and Plaintiff, Defendant Yang had no reasonable expectation that Plaintiff would race to the courthouse to file a lawsuit in a transparent attempt to prejudice Yang's ability to protect his intellectual property and business interests.

    Further evidence that Plaintiff's motives in filing its Complaint were other than a perceived threat of imminent legal action by Defendant Yang are revealed by Plaintiff's omission of Meijer as a party to this action in Plaintiff's Certificate of Interested Parties of record in this action.   *See* Certificate of Interested Persons/Disclosure Statement, Doc. 2.   Specifically, Plaintiff failed to disclose Meijer's interest in this action to this Court despite Plaintiff's knowledge of Meijer as the retailer of the infringing items that, in part, give rise to Defendant Yang's claims in the Michigan Action.   Plaintiff's omission of Meijer on the Certificate of Interested Parties was a transparent attempt to mislead this Court and thus, prevent it from

concluding that this forum is not the proper forum for the resolution of the dispute between Meijer, Citi-Talent and Defendant Yang.

Unfortunately neither Plaintiff nor Meijer made any effort to resolve this matter prior to the filing of the instant action, and the only contact Defendant Yang received from Plaintiff was a courtesy copy of the Complaint sent to Defendant Yang's Ohio counsel, accompanied by a demand letter from Plaintiff's counsel.   Plaintiff's actions and omissions are sufficient to undermine its argument that jurisdiction and venue properly lie with this Court.

A close examination of the Complaint reveals the lack of any legal or factual basis for this Court to exercise jurisdiction over this action.   Plaintiff claims in the Complaint that Defendant Yang and his counsel are engaged in a widespread conspiracy to disrupt and interfere with the lawful business activities of Meijer, Plaintiff and others.   Complaint, Doc. 1, ¶16.   As proof of this alleged conspiracy to strangle free trade in the United States, Plaintiff undertook a PACER search and discovered that Defendant Yang has on fourteen (14) separate occasions filed a lawsuit alleging copyright infringement.   Complaint, Doc. 1, ¶14.   Plaintiff also accurately notes that all fourteen cases were ultimately dismissed.   Complaint, Doc. 1, ¶14.   What Plaintiff fails to disclose is that the earliest of the noted cases was filed by Defendant Yang in 2001, and the last case was filed in 2006.   There were no lawsuits filed by Defendant Yang in the United States between 2007 and 2012.   Only two lawsuits have been filed by Defendant Yang in 2013, including the Michigan Action.   This is hardly the record or actions of a person bent on disrupting lawful business activity in the United States.

Rather than a destroyer of commerce, Defendant Yang is an artist and holder of approximately 1,200 U.S. and foreign copyrights. Yang has promoted, marketed and sold his innovative and creative works globally for decades.   To protect his creative efforts and business and proprietary interests relating to his original designs at issue in this action, Yang applied for

the protection afforded by U.S. copyright law for a number of his designs.  Specifically, on June 16, 2003, Defendant Yang sought and was awarded copyright protection for both 2003-187-22551 Acrylic Clear Frost Red/Green/White Glitter Snowman, Copyright Registration No. VA-1-191-543; and 2003-292-23613 Acrylic Clear/ Frost Choir Angel, Copyright Registration No. VA1-191-909.  Complaint, Doc. 1-3,4.

When Defendant Yang became aware of the infringing activity, he placed Meijer on notice.  Upon assurance by Meijer that its supplier would be reviewing and following up on the Cease and Desist Letter, Defendant Yang took no further action and did not threaten imminent legal action; even after he became aware that Plaintiff, whom he believed to be a repeat infringer of his copyrights, was involved.  He took no provocative action so that he might engage in a dialogue that might lead to an out of court resolution of the dispute.  Defendant Yang's patience and restraint was rewarded with Plaintiff filing the Complaint in a venue with no connection to the parties or underlying dispute, in order to gain an advantage by prejudicing Defendant Yang's ability to protect his copyrights.

## II.     LEGAL ARGUMENT

### 1.     Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal of a case for lack of jurisdiction over subject matter. Fed R. Civ. P. 12(b)(1).  A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) must be considered before all other challenges because the court must find jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

In considering a Rule 12(b)(1) motion, a court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  *MD Physicians & Associates v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker,* 645 F.2d

404, 413 (5th Cir. 1981)).  The court may rely upon: 1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the courts' resolution of disputed facts.  *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990); *see also Williamson*, 645 F.2d at 413.  Once a challenge to jurisdiction is raised the burden is upon the party seeking to invoke the court's jurisdiction to prove that jurisdiction is proper. *Stockman v. Federal Election Commission*, 138 F.3d 144, 151 (5th Cir. 1998).  When it appears that subject matter jurisdiction is lacking, it is incumbent upon all federal courts to dismiss the action.  *Stockman*, 138 F.3d at 151.

### 2. The Declaratory Judgment Act and the First-to-File Rule

The Declaratory Judgment Act allows federal courts to the opportunity to declare the rights and the legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201(a).  The Supreme Court has held that the Declaratory Judgment Act grants discretion to district courts rather than an absolute right to litigants. *Wilton v. Seven Falls Company*, 515 U.S. 277, 288 (1995).

The Fifth Circuit in *Sherwin-Williams Company v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003) outlined the three steps a district court must follow to determine whether to decide or dismiss a declaratory judgment case:

1. the district court must determines whether the declaratory action presents a justiciable actual controversy;

2. the district court must determine whether it has the authority to grant declaratory relief, and

3. the district court must determine whether to exercise its discretion to decide or dismiss the action. (*Sherwin-Williams* at 387).

Where two identical cases are filed in courts of concurrent jurisdiction, the court in which the first action was filed has the responsibility to determine which of the cases should proceed. *Mann Mfg., Inc. v. Hortex Inc.,* 439 F.2d 403, 407 (5th Cir. 1971).  The first-to-file rule is not adhered to where compelling circumstances dictate that the first action be dismissed rather than the second action.  *British Borneo Exploration, Inc., et al. v. Enserch Exploration, Inc. et al.,* No. 98-1609, 1998 WL 814625 at *8 (E.D. La. Nov. 24, 1998) (citing *Johnson Bros. Corp.  v. International Brotherhood of Painters*, 861 F.Supp. 28, 29 (M.D. La. 1994)).

**3.**    **This Court Should Exercise its Discretion and Dismiss The Complaint and its Claims For Declaratory Relief Because Plaintiff Engaged in Forum Shopping By Filing This Action in Anticipation of a Substantially Similar Lawsuit Now Pending in the Western District of Michigan**

The Fifth Circuit in *Travelers Ins. Co. v. Louisiana Farm Bureau Federation*, 996 F.2d 774, 778 (5th Cir. 1993) identified seven non-exclusive factors for a district court to consider when deciding whether to adjudicate or dismiss a declaratory judgment action;

1.    whether there is a pending action where the matter may be fully litigated;

2.    whether the plaintiff filed suit in in anticipation of a lawsuit filed by the defendant;

3.    whether the plaintiff engaged in forum shopping in bringing the suit;

4.    whether possible inequities exist in allowing the declaratory plaintiff to gain precedence in time or to change forums;

5.    whether the federal court is a convenient forum for the parties and witnesses;

6.    whether retaining the lawsuit in federal court would serve the purpose of judicial economy; and

7.    whether the federal court is being called on to construe a state judicial decree involving the same parties.

A.     **The Western District of Michigan Is An Appropriate Forum for All Matters to be Litigated by the Parties.**

In the case *sub judice* there is a pending action filed by Defendant Yang in the United States District Court for the Western District of Michigan where the disputes between the parties may be fully litigated.  The facts and allegations underlying the Michigan Action and the present action are practically duplicative, except that Plaintiff has failed to include a necessary party, Meijer, in the instant action.  Both actions concern the enforceability of Defendant Yang's copyright, trade dress and common law property rights.  As a result and in the interests of comity, only one action should proceed in order to avoid inconsistent results, duplicative litigation, and a waste of judicial resources and the resources of all parties involved.

In *PAJ, Inc. v. Yurman Design, Inc.,* No. 3:98-CV-2487-P, 1999 WL 68651 (N.D. Dallas February 9, 1999), this Court determined that the general rule favors the first-to-file, except where compelling reasons dictate that the first case should be dismissed.  This Court, in reviewing the factors detailed in *Travelers,* found that Yurman's second-filed case encompassed substantially the same issues and claims as the pending action then before it.  That determination was sufficient for this Court to conclude that there were sufficient grounds to decline jurisdiction over the action initiated by PAJ.  *PAJ, Inc.*, 1999 WL 68651 at *5.  The Michigan Action will provide Citi-Talent with every opportunity to protect the alleged rights it seeks to adjudicate in the present action.

B.     **The Complaint Must Be Dismissed Because it Was Filed in Anticipation of an Action by Defendant Yang.**

While the general rule is that the first of two mirror image suits filed in two distinct federal district courts takes priority, an exception exists when a declaratory judgment action is filed in anticipation of litigation by the other party and thus, is viewed as an abuse of judicial procedure.  *PAJ, Inc.*, 1999 WL 68651 at *4 (citing *Pacific Employers Ins. Co. v. M/V Capt.*

*W.D. Cargill*, 751 F.2d 801). That is the case here.  Plaintiff filed this action in anticipation of litigation being filed by Yang due to Plaintiff's unwillingness to attempt to resolve this matter outside of court.  As a result, this Court should decline to exercise judgment over this action. When a declaratory judgment action is filed in anticipation of an infringement action, and the infringement action is promptly filed thereafter in a forum more convenient for the parties and the witnesses, the infringement action should proceed, and the declaratory judgment action should be dismissed.  *Pacific Employers Ins. Co v. M/V Capt. W.D. Cargill,* 751 F.2d 801, 804 (5th Cir. 1985).

The facts in *Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.,* 23 F.Supp.2d 906 (N.D. Ill. 1998) and in *PAJ* are strikingly similar to those before this Court.  In *Eli's Chicago Finest*, counsel for the defendant sent a cease and desist letter to the plaintiff protesting plaintiff's use of certain trademarks of defendant.  In response, the plaintiff filed a declaratory judgment action.  The Court concluded that a declaratory judgment was unnecessary because the plaintiff did not file the action because it was uncertain of its rights; but rather to secure venue in anticipation of legal action by defendant.  *Eli's Chicago Finest*, 23 F.Supp.2d at 909.

Similarly, in *PAJ,* counsel for Yurman sent a cease and desist let to PAJ protesting PAJ's violation of Yurman's copyrights.  Yurman's cease and desist letter threatened to initiate litigation if PAJ did not comply with its demands.  Yurman's cease and desist letter also specified that if PAJ complied with its requests that it would not take legal action.  Rather than respond to that cease and desist letter, PAJ filed a declaratory judgment action in this Court one day prior to the response deadline requested by Yurman.  Yurman then filed a complaint alleging copyright violations by PAJ in the Southern District of New York and moved this Court to dismiss PAJ's declaratory judgment action.  Ultimately, this Court granted Yurman's motion to dismiss, holding that PAJ had filed an anticipatory suit that was an abuse of the Declaratory

Judgment Act and prejudiced Yurman's ability to protect his property rights. *PAJ, Inc.*, 1999 WL 68651 at *6-7. In considering the *Traveler* factors, this Court found PAJ's decision to file suit one day prior to the reply deadline to be further evidence that its motives were to rush to the courthouse and were grounds for dismissal of the declaratory complaint. *PAJ, Inc.*, 1999 WL 68651 at *5.

Motives that lead a party to file an anticipatory suit in a forum different than the venue expected, constitutes forum shopping. *PAJ, Inc.*, 1999 WL 68651 at *5. This Court found the holding in *British Borneo* that "the court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum" to be persuasive because "[s]uch anticipatory suits deprive a potential plaintiff of his choice of forum." *PAJ, Inc.*, 1999 WL 68651 at *6 (citing *British Borneo*, 1998 WL 814625 at *8). This Court concluded that PAJ's actions constituted a classic race to the courthouse and an abuse of the Declaratory Judgment Act to gain an advantage over a potential plaintiff, and found such action sufficient to dismiss the declaratory judgment suit. *PAJ, Inc.*, 1999 WL 68651 at *5.

In the instant case, Plaintiff also failed to respond to a cease and desist letter and filed a declaratory judgment action, apparently motivated by unfounded anticipation of a lawsuit to be filed by Defendant Yang and a desire to deprive Yang of his choice of forum. Plaintiff's declaratory judgment action was filed in a venue that has no connection to the parties or underlying transactions that give rise to Defendant Yang's claims in the Michigan Action. Plaintiff took advantage of Meijer's representation to Defendant Yang that Citi-Talent would review and follow up with him. Instead of responding to the Cease and Desist Letter, Citi-Talent filed the Complaint, prejudicing Defendant Yang's ability to prosecute his claims as well as creating unnecessary and expensive litigation to address Citi-Talent's forum shopping. Plaintiff

attempted to cover its tracks and its abuse of the Declaratory Judgment Act by claiming that the Cease and Desist Letter coupled with Defendant Yang's limited litigation history was designed to disrupt Citi-Talent's and Meijer's business operations.

This Court's decision should follow its sound reasoning and conclusions in its *Paj, Inc.* precedent.  Plaintiff's behavior should not be condoned or rewarded and this Court should dismiss the Complaint.

### C.   All other Relevant Factors Favor Dismissal of this Action.

As previously noted, Citi-Talent raises no basis in the Complaint demonstrating that the parties or the underlying claims of copyright infringement by Defendant Yang have any connection to Texas. There is no allegation that any part of the underlying transactions or activities of the parties that relate to the claims of copyright infringement occurred in Texas.  By comparison, the Michigan Action asserts claims against both Citi-Talent and Meijer.  Meijer's principal offices are located in Grand Rapids, in the Western District of Michigan.  As such, this Court is not the most convenient forum for all of the parties to the disputes involving Defendant Yang's copyright claims.  In fact, it is not a convenient forum for any of the parties.  The vast majority of potential witnesses and documents are available in Michigan.  None are in Texas. Both Citi-Talent and Yang are located overseas and will incur substantial costs in time and legal expense no matter where the action is litigated.  However, Meijer and Yang will experience significantly more time and legal expense if the matter is decided in this Court due to the need to relocate necessary documents, people and things from Michigan to Texas.  As for Citi-Talent, by virtue of the alleged indemnification and hold harmless agreement, it will end up bearing some or all of Meijer's added expense.

Moreover, if the burden of travel and expenses are equal for both sides, Citi-Talent as an alleged infringer should not be allowed to alleviate its legal expense or increase the expense and

inconvenience for Defendant Yang by filing an anticipatory declaratory judgment action in a forum with no connection to the parties or disputes.  *PAJ, Inc.*, 1999 WL 68651 at *7 (citing *Metro Optics v. Contex, Inc., Inc.,* No. 3:95-CV-2157-T, 1996 WL 302697 (N.D. Tex. March 14, 1996) at *2; and *Serco Services Co. v. Kelley Co., Inc*., *L.P.,* No. 3:93-CV-1885-R, 1994 WL 715913 (N.D. Tex. May 24, 1994) at *3).  "A plaintiff's choice of forum should only be given protection where the plaintiff before the court is the proper plaintiff – not a manufactured plaintiff through the misapplication of a declaratory judgment action."  *PAJ, Inc.*, 1999 WL 68651 at *6-7 (citing *Serco Services Co.,* 1994 WL 715913 at *2).

The exercise of jurisdiction by this court is discretionary.  Defendant Yang respectfully requests that this Court decline to exercise jurisdiction over this action and permit Defendant Yang, the natural plaintiff in this action, to have the benefit of his choice of forum in the Western District of Michigan.

**4.      This Action Should Be Transferred To The Western District of Michigan.**

In the event that this Court does not dismiss the Complaint in its entirety, this Court should transfer this action to the Western District of Michigan, Grand Rapids Division, pursuant to 28 U.S.C. § 1404(a).  Such a transfer will clearly advance the interests of justice, resulting in a greater convenience to the parties and witnesses and will provide for a more efficient adjudication of the dispute.  Section 1404(a) states:

> "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The threshold requirement under Section 1404(a) -- that the action "might have been brought" in the transferee district -- is clearly satisfied here.  Meijer, an alleged infringer of Defendant Yang's copyrights, is subject to personal and subject matter jurisdiction in the Western District of Michigan.  Venue is also proper because Meijer's principal offices are

located in the Western District of Michigan.  Jurisdiction and venue are also appropriate because, upon information and belief, knock-offs of Defendant Yang's sculptures were sold in the Western District of Michigan; Meijer contracted for the supply of the knock-offs with Citi-Talent from and in the Western District of Michigan; and a "substantial part of the events…giving rise to the claim" occurred in the Western District of Michigan.

An examination of the threshold factors for determining a transfer pursuant to Section 1404(a) include:

1.      [t]he Plaintiff's choice of forum;

2.      [t]he availability of compulsory process for the attendance of unwilling witnesses;

3.      [t]he cost of obtaining the attendance of willing witnesses;

4.      [t]he location of counsel;

5.      [t]he relative congestion of the Courts' dockets;

6.      [t]he relation of the community in which courts and the jurors are required to serve to the occurrence giving rise to the suit;

7.      [t]he determination of which state's laws will apply when the law of the two states could apply; and

8.       [t]he time, cost, and ease with which the trial can be, and all other practical considerations relative to the trial.  *TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp.2d 407, 411 (quoting *Fletcher v. Southern Pacific Transp. Co*., 648 F. Supp. 1400, 1401 (E.D. Tex. 1986)).

The balance of the above factors weighs strongly in favor of a transfer of this action to Michigan and consolidation of this action with the Michigan Action.

### A.      Choice of Forum

Where, as here, there is an improper anticipatory filing, the true plaintiff's choice of forum should be accorded substantial weight. *Metro Optics*, 1996 WL 302687 at *2; *Gribbin v. Hammer Galleries,* 793 F. Supp. 233, 236 (C.D. Cal. 1992) (dismissing declaratory judgment action and explaining that the potential harm to plaintiff in having to defend an action in New York was counterbalanced by the principle underlying dismissal of his action that the allegedly aggrieved party is allowed to choose the time and place for suit). Even if one assumes that Citi-Talent's choice of forum is determined to weigh in its favor, such a finding should not override all the other factors discussed below which weigh in favor of a transfer. Courts routinely transfer cases when the principal events and principal witnesses are located in another district. *Butcher v. Gerber Prods. Co.*, No. 98 Civ. 1919, 1998 WL 437150 at *8 (S.D. N. Y. Aug. 3, 1998). Meijer and its actions are a focal point of the underlying transactions that violated Defendant Yang's copyrights. Meijer is also the likely source of most witnesses and relevant documents. The principal events occurred, and the principal witnesses in the U.S. are located in Michigan. This Court should, therefore, grant Defendant Yang's request for transfer.

### B.      Convenience of the Parties and Availability of Compulsory Process of Unwilling Witnesses.

The convenience of the parties and the witnesses is accorded substantial weight. *Gundle Lining Constr. Corp.*, 844 F. Supp. at 1166; *see also Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992). Meijer's relevant personnel are located in Michigan. No one is located in Texas. Plaintiff does business with Meijer in Michigan. Plaintiff cannot claim inconvenience with respect to that forum where it does consistent and regular business.

As for the availability of compulsory process, those witnesses in Michigan who are not officers of Meijer will not be subject to compulsory process in Texas. Neither will those

witnesses overseas who are not officers of Citi-Talent.  In addition, there will be substantial cost to all parties to transport witnesses from Michigan to Texas (persons who might otherwise be able to conduct business in Michigan and thereby offset litigation costs).  There are no witnesses to transport from Texas to Michigan.

####   C.      Sources of Proof

The majority of relevant documents and other materials are likely located in Michigan. As previously noted, documents possessed by Meijer will be key to detailing the business arrangements between Citi-Talent and Meijer that resulted in the infringement of Defendant Yang's property rights and to the identity of the John Doe Defendants.

####   D.      Location of Counsel

The location of counsel does not hold great weight.  *Continental Airlines, Inc.,* 805 F. Supp. at 1399.  Both parties will be inconvenienced by litigating this action in a distant forum. In fact, there appears to be little if any disadvantage even to Citi-Talent since its trial attorney offices out of a remote office in Steamboat Springs, Colorado, not Texas.  He can just as easily travel to Michigan as to Texas.

####   E.      The Congestion of the Courts' Dockets

The statistics that demonstrate one court as more congested than another is not given much weight in this analysis.  *See generally Micheel v. Harrison,* 586 F. Supp. 169, 172 n. 5 (E.D. Pa. 1983).  This is especially true when most or all other factors weigh in favor of the transfer of the action.   Even so, Defendant Yang submits that it is likely that the docket of the Northern District of Texas at Dallas is more congested than that of the Western District of Michigan at Grand Rapids.

### F.      Jury Duty

Rather than congestion of the relevant Courts, the more important factor is consideration of the burden on the citizens of Texas with a jury trial involving a case with little to no meaningful connection to Texas.  Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.  *See TV-3,* 28 F.Supp.2d at 413. The burdens of jury duty in this instance are more properly and fairly placed on the citizens of Michigan, the jurisdiction where Meijer is headquartered and conducts business, and where the majority of the events at issue occurred.

### G.      Governing Law

A choice of law analysis points to the application of Michigan law to this dispute.  *TV-3,* 28 F.Supp.2d at 413 ("Where a controversy is to be determined by state law, a court should consider the desirability of having a case decided by a court in a state whose substantive law governs the action.").  Plaintiff's request for declaratory relief arises from its activities and those of Meijer which Defendant Yang alleges infringed on his property rights and otherwise damaged him.  The locus of any claims arising from the instant action is not Texas but Michigan, where Meijer is headquartered and conducts business, and where the majority of the events at issue between the parties occurred.

Defendant Yang's claims in the Michigan Action address not only Meijer's violation of Yang's copyright and trade dress rights, but also raise significant state law claims involving deceptive trade practices, unfair competition, and civil conspiracy.  As both Citi-Talent and Yang are located overseas the most appropriate forum under a choice of laws analysis for Defendant Yang's tort based claims is Michigan.

In addition, a choice of law analysis favors Michigan law over Texas law.  As the *TV-3* court noted, it is undesirable to have a "court in some other forum untangle problems in conflict

of laws, and in law foreign to itself.'" *TV-3*, 28 F.Supp.2d at 413 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)). Under a Texas choice of law analysis the "most significant relationship test" applies to the choice of law for tort claims. *TV-3*, 28 F.Supp.2d at 420. Under such a test, Michigan law applies to the court's determination of whether Defendant Yang has been damaged by Citi-Talent and/or Meijer's contracting to provide and sell, respectively, infringing knock-offs, and engage in deceptive trade practices, unfair competition and civil conspiracy. Thus, Defendant Yang's unfair competition claims, as well as the related common law and statutory claims, should be governed by Michigan law. *See generally Oliver Gintel, Inc. v. Koslow's Inc.*, 355 F. Supp. 236, 238 (N.D. Tex. 1973) (claim for unfair competition, which includes "passing off" is governed by the law of the state where the claim arose); *Business Trends Analysts v. Freedonia Group, Inc.*, 650 F. Supp. 152, 1455-56 (S.D.N.Y.) (explaining that jurisdiction over a commercial tort arises at "the point of consumer purchase"). Again, Meijer is headquartered and conducts business in Michigan. The majority of the events at issue occurred in Michigan. The choice of law analysis favors a transfer of this action to the Western District of Michigan.

## III. ABSENT DISMISSAL OR TRANSFER THIS COURT SHOULD STAY THIS ACTION PENDING RESOLUTION OF THE MICHIGAN ACTION

Should this Court decide not to dismiss or transfer this action, this Court should stay this action pending resolution of the Michigan Action. *See, e.g.*, *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967) (where declaratory judgment action was "triggered" by defendant's letter contemplating legal action, court affirmed district court's determination to stay declaratory action pending resolution of New York federal action filed thereafter; court explained that the fact of anticipatory filing as well as plaintiff's ability to obtain legal relief in New York warranted a stay of the declaratory action); *see also Ruth's Chris Steak House Franchise, Inc. v. Brown,* No. 3:93-CV-1885-R, 1996 WL 39406, at *3 (E.D. La. Jan. 31, 1996)

(noting, in *dicta*, under Fifth Circuit law, that the factors applicable to a dismissal of a first-filed declaratory judgment action also apply to a determination of whether such an action should be stayed).

## IV.     CONCLUSION

For all of the foregoing reasons, Defendant Yang respectfully requests that the Court dismiss this action, or in the alternative, transfer this action to the Western District of Michigan. Should the court decide not to dismiss or transfer this action, Defendant respectfully requests that the Court stay this action pending resolution of the Michigan Action.

Respectfully submitted,

/s/ Robert M. Hailey
Robert M. Hailey
Texas Bar No. 24027362
*rhailey@rwtrial.com*
Steven L. Russell
Texas Bar No. 17437040
*srussell@rwtrial.com*
RUSSELL & WRIGHT, PLLC
15770 Dallas Parkway, Suite 1050
Dallas, Texas 75248
972-267-8400 (office)
972-267-8401 (fax)
**ATTORNEYS FOR DEFENDANT
JING-SHENG YANG**

## CERTIFICATE OF SERVICE

On April 1, 2013, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic filing system of the court.  I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Robert M. Hailey
Robert M. Hailey